# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

DANIELLE MARIE BUSH,

                                   Plaintiff,

                  v.                                    5:13-CV-994
                                                        (MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

---

CHRISTOPHER CADIN, ESQ., for Plaintiff
SERGEI ADEN, ESQ., Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On September 28, 2010, plaintiff protectively filed[1] her application for supplemental security income ("SSI"), claiming disability beginning September 28, 2009. Plaintiff's application was denied initially on January 5, 2011 (Administrative Transcript ("Tr.") 65-69), and she requested a hearing before an ALJ. (Tr. 71). The hearing, at which plaintiff testified, was conducted on December 8, 2011. (Tr. 92-

---

[1] When used in conjunction with an application for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. See 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

102).

In a decision dated December 21, 2011, the ALJ found that plaintiff was not disabled. (Tr. 10-20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 28, 2013. (Tr. 1-5).

## II.  FACTS

Plaintiff's counsel has included a detailed summary of the facts in her brief. (Pl. Br. at 1-5). Defendant has incorporated this summary into her brief. (Def. Br. at 1). This court will also incorporate the facts as stated by the ALJ and both counsel, with any exceptions as noted in the discussion below.

## III.  APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner  will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## IV.   <u>ALJ's DECISION</u>

The ALJ found that plaintiff, who was twenty-six years old, had never engaged in substantial gainful activity. (Tr. 12). The ALJ then found that plaintiff had a "severe impairment" of depressive disorder, NOS.[2] (*Id.*). The ALJ found that

_____

[2] Not otherwise specified.

4

plaintiff's remaining alleged impairments of fibromyalgia and asthma did not rise to the level of severe impairments."[3] (Tr. 13-14). Despite finding that plaintiff's remaining physical impairments were non-severe, he considered the limiting effects of the combination of all plaintiff's impairments in determining her residual functional capacity ("RFC"). (Tr. 14). The ALJ concluded that plaintiff's mental impairment did not meet the severity of any listed impairment.[4] (Tr. 14-15). The ALJ explained that his analysis of plaintiff's limitations in the context of the listed impairments did not constitute an RFC finding, and that his RFC would contain a more detailed assessment of plaintiff's limitations. (Tr. 15).

The ALJ then proceeded to Step 4 and found that plaintiff had the physical RFC to perform light work, and that she was able to perform simple work, "in that she is able to (on a sustained basis) understand, remember, and carry out simple instructions and directions, respond appropriately to supervisors, co-workers, and usual work situations, and deal with changes in a routine work setting." (Tr. 15-16).

In making the RFC determination, the ALJ noted that at the hearing, plaintiff testified that her most significant condition was depression; but that she was also

---

[3] The ALJ further noted that plaintiff has also been medically managed for costochondritis, obesity, patellofemoral disease in the knees, poor sleep patterns, history of gastroesophageal reflux disease, and mild internal hemorrhoids, but that none of these conditions rose to the level of a "severe impairment." (Tr. 13).

[4] The ALJ explicitly considered sections 12.04 (affective disorders) and 12.06 (anxiety related disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that plaintiff did not have at least two "marked" limitations in activities of daily living, social functioning, concentration, persistence, and pace. (Tr. 14). Nor did plaintiff have one "marked" limitation and "repeated" episodes of decompensation "each of extended duration." (Tr. 14-15). The ALJ further noted that there was no evidence to show that plaintiff has any episodes of decompensation or that she would decompensate if she experienced minimal increases in mental demands or a change in environment. (Tr. 15).

limited by fibromyalgia and asthma. (Tr. 16). The ALJ considered plaintiff's testimony regarding her symptoms, finding that her impairments could reasonably be expected to cause the alleged symptoms. (*Id.*). However, the ALJ found that her testimony regarding the intensity, persistence, and limiting effects was only partially credible. (Tr. 16). The ALJ based his finding in part on plaintiff's treatment history and reported daily activities. (*Id.*). More specifically, the ALJ stated that plaintiff did not begin mental health counseling until February 2011, despite an alleged onset date of September 28, 2009, and that in the past, she had been discharged from counseling for failure to attend appointments. (*Id.*). He further explained that her depressive symptoms were frequently attributed to the recent loss of relatives, which was a "situational situation which may improve in the future." (*Id.*). With respect to her daily activities, the ALJ observed that plaintiff testified at the hearing that she is able to shop, care for two cats and two dogs.[5] Plaintiff further reported "that she is able to 'cook one or three days a week, clean[] once a week, [do] laundry once a week . . . she can shower, bathe, and dress daily . . . activities [are] TV, radio, and reading . . . her hobby is gardening.'"[6] (Tr. 17) (second alteration in original). The ALJ also determined that her "minimal work history shows that she has not yet developed an attachment to the work force, which detracts from her credibility regarding motivation to work." (*Id.*).

---

[5] Although plaintiff has two cats and two dogs, she lives with her mother, and her mother walks the dogs. (Tr. 140, 168).

[6] The court notes that despite plaintiff's interest in gardening, plaintiff also reported that she no longer participates in this activity due to a lack of interest, a lack of energy, and an inability to bend. (Tr. 38-39, 140, 168, 171).

With respect to plaintiff's physical limitations, despite finding that plaintiff had no "severe" physical impairments, he gave plaintiff "the benefit of the doubt and determined that the combination of the [plaintiff's] non-severe impairments limit her to a light exertional level." (Tr. 18). After reviewing the record, the ALJ gave the opinions of plaintiff's treating physician Dr. Rosemarie Hurley reduced weight. (Tr. 18). The ALJ found that the reports completed by Dr. Hurley did not provide a function-by-function assessment, they contained opinions on an issue reserved to the Commissioner, and they were not consistent with the longitudinal medical evidence in the record, including her own treatment notes. (*Id.*). The ALJ did not assign a specific weight to the reports of Dr. Linda Warnowicz, a rheumatologist, who treated plaintiff for fibromyalgia. The ALJ stated that although Dr. Warnowicz diagnosed plaintiff with fibromyalgia, she "refers to tender points rather than trigger points," and she failed to identify eleven of the eighteen requisite trigger points. (Tr. 13). He also noted that during an October 15, 2010 examination, Dr. Warnowicz found that plaintiff's muscles were of normal size and strength, there was no active synovitis in any joints, she had a negative straight-leg raising test, normal lumbosacral spine films, no sensory deficits, and full motor strength. (Tr. 17). The ALJ gave the opinion of the Administration's consultative examiner, Dr. Kalyani Ganesh,[7] significant weight, due to her programmatic expertise and examination of plaintiff. The ALJ then described Dr. Ganesh's essentially normal findings from her examination of plaintiff.

---

[7] Dr. Ganesh examined plaintiff on November 16, 2010. Dr. Ganesh found that plaintiff had eight tender points, diagnosed her with fibromyalgia, and found her prognosis to be fair. Dr. Ganesh then determined that plaintiff had "no gross physical limitation noted to sitting, standing, walking or the use of upper extremities." (Tr. 224-27).

(Tr. 17).

With respect to her mental impairments, the ALJ gave significant weight to the opinion of the Administration's consultative examiner, Dr. Dennis Noia, because of his programmatic expertise and examination of plaintiff. Dr. Noia concluded that despite "some" difficulty dealing with stress, plaintiff was able to understand and follow simple instructions and directions, perform simple and some complex tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others.[8] (Tr. 17-18). The ALJ also gave significant weight to the reports completed by Dr. Nobel, the Administration's psychological consultant. After review of the medical records, Dr. Nobel opined that plaintiff was not significantly limited in most work-related mental activities. (Tr. 18). The ALJ gave very limited weight to the medical source statement completed by Elizabeth Finn, NPP and Nancy Hazel, LMSW, who found "extreme" limitations, because they were not acceptable medical sources, and their opinions were not consistent with the longitudinal medical evidence in the record. (Tr. 18-19).

The ALJ concluded that plaintiff had no past relevant work. (Tr. 19). The ALJ determined that plaintiff's non-exertional mental limitations had little or no effect on the occupational base of unskilled light work. The ALJ then used the Medical Vocational Guidelines to determine that there are jobs existing in significant numbers

---

[8] Dr. Noia recommended continued pharmacological treatment and therapy, finding that her prognosis was guarded, but "hoped that with continued intervention and support, she would find symptom relief and maximize her abilities." (Tr. 220-23).

in the national economy that plaintiff could perform, and therefore, she was not disabled.

## V.  ISSUES IN CONTENTION

The plaintiff makes the following claims:

(1)  The ALJ erred in his severity determination.  (Pl. Br. at 8-15) (Dkt. No. 10).

(2)  The ALJ's RFC determination is not supported by substantial evidence and is affected by legal error.  (Pl. Br. at 15-19).

(3)  The ALJ erred in his credibility determination.  (Pl. Br. at 19-21).

(4)  The ALJ erred in his evaluation of the medical evidence, including the opinions of plaintiff's treating physicians. (Pl. Br. at 21-23).

(5)  The ALJ erred in his Step 5 determination.  (Pl. Br. at 23-24).

Defendant argues that the Commissioner's decision is supported by substantial evidence and must be affirmed.  (Dkt. No. 12).  For the following reasons, this court agrees with plaintiff that the ALJ erred in his severity determination, his evaluation of the medical evidence, and in his evaluation of plaintiff's credibility, which taints his RFC determination, his Step 5 determination and the ultimate finding that plaintiff was not disabled.  Accordingly, the court recommends that this case should be remanded for further administrative proceedings.

## VI.  DISCUSSION

### A.  Severe Impairment

#### 1.  Legal Standards

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 5:09-CV-1422 (FJS/VEB),

2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step 2 if it does not significantly limit a claimant's ability to do basic work activities). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). It is quite clear from these regulations that "severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) (citations omitted).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3). The Second Circuit has held that the Step 2 analysis "may do no more than screen out de minimis claims." *Dixon v. Shalala*, 54 F.3d 1019,

1030 (2d Cir. 1995). If the disability claim rises above a de minimis level, then the remaining analysis of the claim at Steps 3 through Step 5 must be undertaken. *Id.* at 1030.

### 2.    Application

The court finds that the ALJ misconstrued the applicable legal standard when finding that plaintiff's fibromyalgia was not a severe impairment. "Mindful that the existence of a severe impairment serves only as a threshold to be met for the purpose of screening out de minimis claims," the ALJ's conclusion that plaintiff's fibromyalgia was not a severe impairment was not supported by substantial evidence. *Isaacs v. Astrue*, 07-CV-257, 2009 WL 528252, at *8 (W.D.N.Y. Mar. 2, 2009). It is true that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008). However, the ALJ appears to have based his rejection of plaintiff's fibromyalgia symptoms on an erroneous reading of the medical evidence. The ALJ focused on a lack of objective evidence, pointing to medical records that demonstrate that blood tests and x-rays were normal, "normal" chest and lung examination, and a full range of motion of her lumbar spine, cervical spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles, a negative straight-leg raising test, "normal" lumbosacral spine films, and full motor strength. (Tr. 13, 17). However, fibromyalgia is a disease that eludes objective measurement: "physical limitations will usually yield normal results–a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *See Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003) (internal quotation marks and citations

omitted).

The main symptoms of fibromyalgia are pain all over, fatigue, disturbed sleep, and multiple tender points. The longitudinal evidence here shows that plaintiff indeed experienced these symptoms. (*See, e.g.,* Tr. 215 (12/28/09 noting symptoms of pain all over, hurts to touch); Tr. 212 (7/27/10 "still complains of fatigue and multiple aches and pains"); Tr. 218 (plaintiff complains of diffuse aches and pains and fatigue for at least two years if not longer); Tr. 224-27 (11/16/10 noting plaintiff's complaints of soreness and aching pain all over, cannot sleep well, some days cannot get out of bed); Tr. 333 (11/24/10 widespread muscle/joint pain); Tr. 334 (12/16/10 pain all over, not sleeping well); Tr. 335 (1/18/11 aching pain in all extremities); Tr. 319-20 (10/4/11 pain, aching, fatigue, sleep disturbances, skin sensitive to minimal touch)). Here, treatment notes of Drs. Hurley and Warnowicz document multiple tender points and indicate that plaintiff complained of fatigue, and generalized pain. Both Drs. Hurley and Warnowicz diagnosed plaintiff with fibromyalgia. Indeed, even the examination of consultative examiner Dr. Ganesh revealed eight tender points.[9]

Additionally, when discounting the opinions of Drs. Hurley and Warnowicz, the ALJ focuses on the use of "tender points" instead of the "trigger points" that he believes should have been used.[10] However, as the Second Circuit has explained, to

---

[9] The ALJ noted that Dr. Ganesh also found six positive control points.

[10] The ALJ notes that Dr. Warnowicz, a rheumatologist, though diagnosing plaintiff with fibromyalgia, "refers to tender points rather than trigger points; [and] fails to specifically identify eleven of the eighteen requisite trigger points required . . . for a proper diagnosis of fibromyalgia." (Tr. 13). Likewise, the ALJ states that Dr. Hurley, plaintiff's treating physician "is unclear about whether the points that she identifies are tender points or trigger points, and she fails to note any control points that she may have utilized." (*Id.*).

the extent that objective medical testing is capable of supporting a diagnosis of fibromyalgia, "the presence of tender points [is] the primary diagnostic technique." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 n.14 (2d Cir. 2003); *see also Selian v. Astrue* 708 F.3d 409, 419 (2d Cir. 2013) ("Relying on guidance from the American College of Rheumatology ("ACR"), we have focused on whether a patient exhibits 'tender points' in evaluating claims of fibromyalgia.").[11]

The ALJ appears to have improperly substituted his own criteria as to what is necessary to establish a fibromyalgia diagnosis without support from medical testimony. Accordingly, the court finds that the ALJ erred in concluding that plaintiff's fibromyalgia was not a severe impairment.[12]

## B.    RFC/Treating Physician/Credibility

### 1.    Legal Standards

#### a.    RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts,

---

[11]After the ALJ issued his decision, the SSA issued a regulation on fibromyalgia that discusses ways to eavluate a purported fibromyalgia diagnosis, including on the basis of the tender points criteria. *See* Social Security Ruling 12-2p, 2012 WL 3104869, at *3.

[12]  Often when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031. However, in light of this and the other errors discussed below, the court finds that on remand, the ALJ should revisit the severity determination.

as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995). The ALJ must evaluate the combined effect of plaintiff's impairments on his/her ability to work, "regardless of whether every impairment is severe." *Id.*

Although the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)) (*Report-Recommendation*), *adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, at *3 (N.D.N.Y. Aug. 2, 2005)). In addition

to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7. "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).

### b. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*).

When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment

relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

### c. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3). If the ALJ finds that plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008).

### 2. Application

#### a. Treating Physician

The ALJ found that plaintiff "has the residual functional capacity to perform light work . . . [and] is able to engage in simple work . . . ." (Tr. 15). With respect to plaintiff's fibromyalgia, and resulting physical limitations, the ALJ stated that "[a]lthough the [plaintiff] has no severe physical impairments, [he gave] the claimant the benefit of the doubt and determined that the combination of the [plaintiff's] non-severe impairments limit her to a light exertional level." (Tr. 18).

The ALJ gave only "reduced weight" to Dr. Hurley's report. Dr. Hurley was plaintiff's treating physician. Notes from her office show a consistent diagnosis of

fibromyalgia (*see, e.g.,* Tr. 334, 335, 319-20, 317-18). Dr. Hurley completed a fibromyalgia questionnaire, stating that plaintiff has pain in at least 11 of the 18 point sites, and listed 14 of these sites. (Tr. 329). Dr. Hurley then opined that plaintiff would only be able to sit for 20-30 minutes at a time without having to change positions, and could only stand/walk for ten minutes at a time due to pain and fatigue. (Tr. 330). Dr. Hurley also opined that she would be able to lift five pounds frequently, and ten pounds on occasion; that bending would be difficult and painful; that climbing/crawling would be difficult and painful; and that she would be unable to perform at a fast pace or sustain work activity over a regular eight hour work day. (*Id.*). Finally, Dr. Hurley explained that plaintiff's almost incapacitating fatigue, and her frustration and depression regarding her unrelenting symptoms would interfere with her ability to function. (Tr. 331).

As described above, the ALJ appears to have improperly discounted Dr. Hurley's reports in part because she did not specify whether she was referring to "tender points" instead of "trigger points" for her fibromyalgia diagnosis.[13] The ALJ also discounts Dr. Hurley's opinion because in one treatment note, she described plaintiff's condition as "unspecified myalgia and myositis." However, the ALJ ignores Dr. Hurley's other notes, and her medical source statement, all of which diagnose plaintiff with fibromyalgia. The ALJ also claims that Dr. Hurley's reports are "not consistent with the longitudinal medical evidence in the record, including her own treatment notes." (Tr. 18). The ALJ does not describe the ways in which Dr.

---

[13] The aLJ also appeared to discount Dr. Warnowicz's fibromyalgia diagnosis because she referred to tender points instead of trigger points.

Hurley's opinion is inconsistent. A review of the medical evidence demonstrates that her opinion is not inconsistent with either the longitudinal medical evidence or her treatment notes. As outlined above, plaintiff consistently complained of fibromyalgia symptoms–including pain and fatigue. Dr. Hurley (and others in her office) discussed plaintiff's fibromyalgia with her, prescribed medications for her, and referred her to a rheumatologist, Dr. Warnowicz. (*See, e.g.,* Tr. 212, 213, 214, 218, 317-18, 319-20, 329-31, 334, 335).

Dr. Warnowicz[14] also observed tender points, and diagnosed and treated plaintiff for fibromyalgia. (Tr. 219 ("Diffuse pain syndrome most consistent with fibromyalgia."); Tr. 316 (finding "multiple tender points" and explaining that "[f]ibromyalgia is the biggest component of her complaints," noting that it is associated with underlying depression)). Although Dr. Warnowicz did not provide a medical source statement with specific physical limitations, her records are consistent with those of Dr. Hurley.

On the other hand, the ALJ gave significant weight to the opinion of

---

[14] The ALJ does not assign any particular weight to the opinion of Dr. Warnowicz, plaintiff's rheumatologist. There are two treatment records from Dr. Warnowicz in the record. While the record does not include a detailed assessment of plaintiff's limitations from Dr. Warnowiczt, the ALJ is still required to sufficiently explain the weight assigned to her treatment opinions. The ALJ should have explained the weight given to this opinion. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)); *see also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." (quoting 20 C.F.R. § 416.927)).

consultative examiner, Dr. Ganesh.[15]  Dr. Ganesh examined plaintiff once, noting that plaintiff's subjective complaints included: soreness and aching pain all over; an inability to get out of bed some days; an inability to sleep well; and tenderness, stiffness, and back and leg pain.  (Tr. 224-27).  Dr. Ganesh generally made normal physical findings for plaintiff, but noted that she had eight tender points and six control points.  (*Id.*).  Dr. Ganesh found that plaintiff's diagnoses were fibromyalgia, costochondritis, and asthma.  (Tr. 226).  He found her prognosis to be fair, but then opined that she had '[n]o gross physical limitation [] to sitting, standing, walking or the use of upper extremities." (*Id.*).  When evaluating plaintiff's physical limitations, the ALJ appears to rely primarily on Dr. Ganesh's conclusion that plaintiff "had no physical functional limitations." (Tr. 13).  However, he does not address Dr. Ganesh's opinion that plaintiff's prognosis was fair, that she did diagnose plaintiff with fibromyalgia, and that she found eight tender points.[16]  The ALJ chose to address only those parts of Dr. Ganesh's opinion that were unfavorable to plaintiff's disability claim.[17]  The ALJ cannot "cherry pick" only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence.  *See, e.g., Royal v.*

---

[15]  Although at times during her brief, plaintiff discusses the opinion of State Agency analyst, defendant correctly notes that the ALJ did not err in failing to consider this opinion.  "Opinions of a disability analyst, who has no medical training, are not entitled to evaluation as medical opinions."  *Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *11 n.21 (N.D.N.Y. Feb. 25, 2014).

[16]  The court recognizes that this is less than the eleven tender points required by the American College of Rheumatology (ACR) guidelines.

[17]  Additionally, the court notes that the Second Circuit has "previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."  *Selian v. Astrue* 708 F.3d 409, 419 (2d Cir. 2013).

*Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at \*6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Report-Recommendation), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

The ALJ's conclusion that Dr. Hurley's opinion is not supported by medical evidence is contrary to the evidence in the record. Her evaluation is consistent with plaintiff's subjective allegations, with the statement of plaintiff's mother, and with the records from Dr. Warnowiz. Dr. Hurley's opinion is supported by diagnostic techniques and is not inconsistent with the other substantial evidence in the record. In rejecting Dr. Hurley's opinion, the ALJ improperly "substituted his own judgment for competent medical opinion," and "set his own expertise against that of [physicians.]" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). The court finds that the ALJ failed to consider the consistency of Dr. Hurley's opinion with contemporaneous treatment notes and other medical evidence of record, and in some cases, appears to have overlooked supporting medical evidence.[18]

Plaintiff also contends that the opinions of Finn and Hazel, which addressed plaintiff's mental limitations, were not properly considered by the ALJ as "other sources." Although they are not acceptable medical sources under the Social Security Regulations, they are "other sources" whose opinion the ALJ may consider regarding

---

[18] Although the ALJ erred in discounting Dr. Hurley's opinion for these reasons, the court recognizes that there may be reasons for discounting her opinion on remand. Indeed, treatment notes from Dr. Warnowicz confirm the diagnosis of fibromyalgia, but do not indicate the degree to which it restricts plaintiff's ability to perform basic work activities.

the severity of a claimant's impairment and how it affects the claimant's ability to work. *See Luffman v. Comm'r of Soc. Sec.*, No. 12-CV-317, 2013 WL 1386639, at *7 (N.D.N.Y. Mar. 14, 2013) (citing 20 C.F.R. § 404.1513(a)). In weighing these opinions, the ALJ must use the same factors used for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 416.927(c). In the medical source statement, Hazel and Finn opine that plaintiff is markedly limited in responding appropriately to stress/work pressures in a usual work setting and to changes in a routine work setting, and in working at a fast pace; and has extreme limitations in sustaining ordinary work routine without requiring special or increased supervision, maintaining attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.

As the ALJ correctly noted, the restrictive medical source statement completed by Hazel and Finn is not supported by the record or Hazel and Finn's treatment notes. For example, Dr. Noia conducted a consultative examination of plaintiff on November 16, 2010, finding that plaintiff was able to understand and follow simple instructions and directions, perform simple and complex tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others. Dr. Nobel reviewed the available evidence and adopted Dr. Noia's opinion. Although the records of plaintiff's mental health treatment consistently indicate that plaintiff was depressed, they also consistently fail

to report any significant issues with her cooperation, judgment, focus, or thought process. (*See, e.g.,* Tr. 201-06, 197-200, 194-96, 293-98, 308-10, 311-13).

For these reasons, the ALJ did not err in weighing the opinions of Finn and Hazel regarding plaintiff's mental limitations, but did err in failing to weigh the opinions of plaintiff's treating physicians regarding her physical limitations. Accordingly remand is necessary so the ALJ can appropriately evaluate and explain the weight he assigns to the opinions regarding plaintiff's physical limitations.

### b.    Credibility

Plaintiff next argues that the ALJ failed to properly assess plaintiff's credibility. The ALJ, applying the appropriate two-step credibility standard, found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible.  The court notes that in cases dealing with fibromyalgia, "the credibility of the claimant's testimony regarding [her] symptoms takes on substantially increased significance" when evaluating the evidence. *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).  Plaintiff consistently complained of fatigue and pain, and an inability to do many activities.[19]  The ALJ appears to have based his credibility determination primarily on plaintiff's daily activities and her treatment history.

The ALJ appears to have misunderstood the extent and/or nature of plaintiff's daily activities.  For example, although the ALJ states that plaintiff is able to care for

---

[19] "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  Social Security Ruling 96-7p, 1996 WL 374186, at *5.

pets, cook one to three days per week, and garden. Plaintiff testified that she was significantly limited in all of these activities. Both plaintiff and her mother made clear that plaintiff feeds the pets, but is now unable to walk the dogs. (Tr. 139-40; 168). Plaintiff stated that she prepares spaghetti, tacos, sandwiches, cereal, or rice two to three times per week, and that her mother does the rest of the cooking because plaintiff has lost interest and is not up to it. (Tr. 169; *see also* Tr. 141 (plaintiff's mother similarly stated that plaintiff prepares sandwiches or cereal two to three times per week)). Although plaintiff confirmed that she enjoys gardening, it is clear from the record that she no longer gardens (Tr. 140, 171, 36, 38-39). Indeed, plaintiff appears to spend the majority of her time resting. (Tr. 139-40 (mother explaining that plaintiff fixes a bowl of cereal, takes care of pets and then lays down); Tr. 143-44 (mother explaining that plaintiff watches TV and reads, and that her social activities have completely stopped); Tr. 171 (plaintiff stating that she reads and watches TV every day); Tr. 172 (plaintiff stating that she does not go anywhere socially); Tr. 33 (plaintiff testifying that if she has energy, she might do light housework, visit her grandmother or go to the store; but if not she would rather stay in bed most of the time)). It is unclear from the ALJ's opinion how these daily activities are consistent with an ability to perform light work.

The ALJ found that the gaps in plaintiff's treatment history lessen her credibility. However, the ALJ did not consider plaintiff's treatment history for her fibromyalgia, but only for her mental health issues.[20] The medical evidence in the

---

[20] With respect to treatment for her mental issues, the ALJ states that plaintiff did not begin treatment until February 2011, despite alleging an onset date of September 2009. However, there are notes from plaintiff's mental health treatment in October 2009 and April

record demonstrates that plaintiff consistently sought treatment for her physical complaints. Additionally, the ALJ does not appear to have considered the explanations for the gaps in treatment that can be found in the record. SSR 96-7p.[21] For example, there is a note in her treatment record from October 2009 that she stopped coming in the past secondary to depression. (Tr. 197-200). In May 2010, plaintiff explained to her doctor that she had been going to therapy, but her therapist went on leave, and she did not want to see someone else. (Tr. 213). During the hearing, plaintiff also explained that some of the gaps in treatment for mental health were when she felt that the treatment was not doing anything for her. (Tr. 43). It is unclear from the ALJ's opinion if he considered these reasons before making inferences regarding plaintiff's credibility.

Accordingly, because this court is unable to glean the extent to which relevant evidence was weighed by the ALJ in assessing plaintiff's credibility, remand is necessary. Moreover, to the extent remand is necessary so that the ALJ may address the treating physician rule, the ALJ should consider whether his reevaluation of the medical evidence alters his assessment of the plaintiff's credibility. To the extent the ALJ determines on remand that plaintiff's testimony concerning her limitations is contradicted by her activities of daily living, the ALJ should consider, and explain,

---

2010.

[21] If it appears that plaintiff did not follow treatment recommendations or seek treatment, the individual's statements may be less credible. However, this Ruling explains that "the adjudicator must not draw any inferences . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.*

how these activities are consistent with an ability to perform light work.

### c. RFC Determination

The ALJ found, that the plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), in that the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Additionally, the claimant is able to engage in simple work in that she is able to (on a sustained basis) understand, remember, and carry out simple instructions and directions, respond appropriately to supervisors, co-workers, and usual work situations, and deal with changes in a routine work setting.

(Tr. 15-16). It is unclear how the ALJ reached the conclusion that plaintiff is physically able to perform light work. According to the applicable regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967. Dr. Hurley opined that plaintiff would not be able to sit for more than 20-30 minutes at a time, or stand/walk for more than ten minutes at a time; and could not sustain activity for a regular eight hour work day. Dr. Ganesh concluded that plaintiff had no physical limitations. Additionally, plaintiff's reported daily activities do not support the ALJ's RFC determination. As discussed above, the ALJ appears to have overstated a number of plaintiff's daily activities, and, in any event

they do not support a finding that plaintiff would be able to perform light work.

For the reasons discussed above, on remand, after the ALJ reconsiders the weight to be applied to plaintiff's treating physician and re-evaluate plaintiff's credibility, the ALJ should also revisit his RFC determination.

### C.    Step 5 Determination

#### 1.    Legal Standards

Once the plaintiff shows that he cannot return to his previous work, the Commissioner bears the burden of establishing that the plaintiff retains the RFC to perform alternative substantial gainful work in the national economy. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("Grids"). *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996); *see also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant

nonexertional impairments[22] are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" will sole reliance on the Grids be deemed inappropriate. *Id.* at 605-06. Case by case determinations can be difficult when an individual has mental impairments and in Social Security Ruling ("SSR") 85-15, the Social Security Administration has promulgated guidelines and examples that illustrate when a nonexertional limitation will "significantly limit" a claimant's range of work. 185 WL 56857, at *4.

An ALJ may determine whether a plaintiff's mental impairments "significantly diminish" his or her work capacity by determining whether the plaintiff can meet the basic mental demands of competitive, remunerative, and unskilled work as stated in SSR 85-15. The ruling states that these basic demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to

---

[22] A "nonexertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Mental impairments are clearly nonexertional.

respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* A substantial loss of the ability to meet any of these demands would severely limit the potential occupational base at any exertional level and would, therefore, "significantly diminish" the plaintiff's work capacity. *See Sipe v. Astrue*, 873 F. Supp. 2d 471 (N.D.N.Y. July 3, 2012). This would prohibit use of the Grids and necessitate the use of a VE to determine whether there would be any jobs left in the national economy that plaintiff could perform.

### 2. Application

Because remand is necessary so that the ALJ may, among other things, revisit the weight assigned to the opinion of Dr. Hurley and plaintiff's credibility, remand is also necessary so that the ALJ may revisit his decision at Step 5 of the sequential analysis after having reevaluated his RFC analysis.

## VII. NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). The plaintiff does not contend, and this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a

proper determination of plaintiff's residual functional capacity and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 8, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge